UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Theresa Tenaglia, ) | Civil Action No.: 6:14-cv-04920-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Theresa Tenaglia seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. The matter is before the Court for review of the Report and Recommendation (R & R) of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. *See* R & R, ECF No. 25. The Magistrate Judge recommends the Court affirm the Commissioner's decision. R & R at 23.

**Factual Findings and Procedural History**

On April 1, 2010, Plaintiff applied for DIB and supplemental security income benefits alleging a disability onset date of June 1, 2009 due to neuropathy, numbness, nerve damage, back pain, and drinking problem. Administrative Transcript (Tr.) at 348. The Commissioner denied her application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge (ALJ). The ALJ held a hearing and issued a decision on October 24, 2012 finding Plaintiff was not disabled Tr. at 125-36. Plaintiff requested review by the Appeals Council, which remanded the case to the ALJ on September 20, 2013 and directed him to:

- Consider whether the doctrine of res judicata applies to the current application.
- Update the record and obtain any available additional evidence concerning the claimant's impairments from her treating sources.
- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . .
- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . and
- Determine whether the claimant has a medically determined substance abuse disorder . . .

Tr. at 144-146.

The ALJ held a video hearing pursuant to the Appeals Council remand on March 12, 2014. At the hearing, the claimant amended her onset date to December 2, 2009. The ALJ issued an unfavorable decision on April 21, 2014, finding Plaintiff was not disabled from December 2, 2009 through the date of its April 21, 2014 decision. Tr. at 19-31. The ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since December 2, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: alcoholic cirrhosis/hepatitis; alcoholic seizures; and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. The claimant must avoid work at heights or around moving machinery. She is limited to understanding, remembering, and

>     carrying out simple instructions. The claimant can occasionally interact with co-workers and supervisors but she must not have significant interaction with the public.
>
> . . . .
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 7.  The claimant was born on September 16, 1966 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).
>
> . . . .
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).
>
> Tr. at 21-25, 30-31.

The Appeals Council denied the plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. On December 31. 2014, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Complaint, ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 21, 22, & 23, and the Magistrate Judge issued his R & R on January 12, 2016, recommending that the Commissioner's decision be affirmed. R & R at 23. Plaintiff

filed objections on January 29, 2016. Pl.'s Objs., ECF No. 26. The Commissioner replied to the objections on February 4, 2016. Def.'s Reply, ECF No. 28.

Plaintiff presents three issues to the Court, arguing the ALJ erred in (1) weighing a treating physician's opinion; (2) failing to properly evaluate whether Plaintiff's liver disease satisfies the criteria for Listing 5.05A; and (3) failing to properly evaluate Listing 5.05B and, in doing so, failing to obtain a medical expert to express an opinion as to whether her condition equals Listing 5.05B.

## Standard of Review

### I.     Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the

Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.     The Court's Review of the Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Determination of Disability**

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).  The claimant bears the ultimate burden to prove disability.  *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985).  The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations.  20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments.  *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975).  This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors.  20 C.F.R. §§ 404.1560(a) & § 416.960(a).  These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform.  *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966.  If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors.  *Id.* §§ 404.1560(c)(1) & 416.960(c)(1).  Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from

a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## **Discussion**

The Magistrate Judge recommends affirming the Commissioner's decision, concluding that substantial evidence supports the decision and that the ALJ and the Appeals Council committed no reversible legal error. R & R at 16. First, the Magistrate Judge finds the ALJ did not improperly weigh the opinion of Plaintiff's treating physician, Dr. Insignares. *Id.* at 13-19. Second, the Magistrate Judge finds that substantial evidence supports the Commissioner's finding that the plaintiff did not meet Listings 5.05A and 5.05B. The Magistrate Judge also finds that the signed Form SSA-831 by a state agency medical consultant was expert opinion evidence regarding Listing 5.05B. Plaintiff objects to each of the Magistrate Judge's recommended findings and conclusions. *See* Pl.'s Objs. The Court addresses Plaintiff's objections in turn.

### **I.    Opinion of Dr. Insignares**

Plaintiff argues the ALJ erred in weighing treating physician Dr. Insignares' opinion about the disabling effect of Plaintiff's liver disease and peripheral neuropathy. Pl.'s Objs. at 2-4. Plaintiff points to several opinions rendered by Dr. Insignares, in which he found that she is disabled. Tr. 836, 1068, and 1255; Pl.'s Objs. at 2-4. The ALJ gave these opinions "little weight." Tr. at 29.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Mastro v. Apfel*,

270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178.

If the ALJ decides a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following non-exclusive list of factors to determine the weight to afford the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; (5) whether the physician is a specialist in the area in which he is rendering an opinion; and (6) other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c); *see also Johnson*, 434 F.3d at 654. The Commissioner must provide specific reasons, supported by the record, for the weight afforded a treating physician's medical opinion. SSR 96-2p.

The Court agrees with the Magistrate Judge's recommendation to affirm the weight the ALJ gave to Dr. Insignares' opinions. To a large extent, Dr. Insignares' opinions cannot be considered *medical* opinions. Dr. Insignares' opinions appear to contain improper legal conclusions. *See Morgan v. Barnhart*, 142 F. App'x 716, 721-23 (4th Cir. 2005) (discussing the distinction between medical opinions, which concern issues reserved to physicians, and legal conclusions, which "are opinions on issues reserved to the ALJ"). The requirement that the ALJ give a treating physician's opinion controlling weight hinges, in part, on whether the opinion is a *medical* opinion. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other

8

acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The mere fact that an opinion is from a physician does not automatically mean the opinion is a medical opinion entitled to controlling weight. *Morgan*, 142 F. App'x at 722.

Here, Dr. Insignares' opinion about whether Plaintiff could work goes beyond a medical opinion to a legal conclusion. Accepting Dr. Insignares' opinions as purely medical opinions would effectively deprive the ALJ of his prerogative to determine disability and bestow that prerogative upon the treating physician, an impermissible consequence at odds with the purposes of the regulations and their enabling statutes. *See, e.g.*, 20 C.F.R. § 404.1527(d) ("Opinions on some issues . . . are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., *that would direct the determination or decision of disability*." (emphasis added)); *Morgan*, 142 F. App'x at 722 (finding a treating physician's opinion that the claimant "'can't work a total of an 8 hour day'" was an improper legal conclusion that the ALJ correctly discredited). To the extent that his October 2013 letter references that Plaintiff "is having trouble lifting items, walking, and maintaining normal activities of daily living", as the Magistrate observes, the doctor did not state to what degree the plaintiff was limited or otherwise explain his opinion. Regardless, the ALJ "accommodated these general restrictions to a certain extent by limiting the plaintiff to lifting/carrying up to ten pounds occasionally and lesser amounts frequently and standing/walking occasionally." R&R, p. 16. The letters of Dr. Insignares do little more than confirm the claimant's diagnoses of end stage liver disease and peripheral neuropathy. The Court finds no reversible error in the ALJ's

9

according the opinions of Dr. Insignares little weight in that they largely express his opinion that the claimant cannot work and ask that she be awarded disability so that she can receive care from specialists. However, the treatment notes and records of the treating physician should still be considered in determining on remand whether a listing has been met, as ordered below.

**II. Listing 5.05**

Plaintiff asserts that the Commissioner failed to properly consider whether her liver disease meets or equals the listing for chronic liver disease, Listing 5.05. She first asserts that substantial evidence does not support the ALJ's finding that she failed to meet Listing **5.05A,** because she had chronic liver disease with gastric hemorrhaging and received a transfusion. Plaintiff contends that she should have at least been awarded disability for one year from the date of the transfusion pursuant to Listing 5.05A. The Commissioner contends that gastric varices involve the upper gastrointestinal system and that the plaintiff had "a transfusion to treat rectal bleeding, i.e., 'a lower GI bleed,' a totally unrelated problem." (Reply to Obj., ECF No. 28, p. 5) The Commissioner further asserts that "the record shows that her cultures testing for a chronic liver condition were negative during that hospital stay." *Id*.

Plaintiff contends, secondly, that substantial evidence does not support the ALJ's findings regarding Listing **5.05B** and that the Commissioner should have obtained a medical expert to issue an opinion concerning whether her liver disease meets the listing.

In pertinent part, the listing requires:

Chronic liver disease, with:
A. Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least

> 2 units of blood. Consider under disability for 1 year following
> the last documented transfusion; thereafter, evaluate the
> residual impairment(s). OR
> B. Ascites or hydrothorax not attributable to other causes,
> despite continuing treatment as prescribed, present on at least
> 2 evaluations at least 60 days apart within a consecutive
> 6-month period. Each evaluation must be documented by:
> 1. Paracentesis or thoracentesis; or
> 2. Appropriate medically acceptable imaging or physical
> examination and one of the following:
> a. Serum albumin of 3.0 g/dL or less; or
> b. International Normalized Ratio (INR) of at least
> 1.5 . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, §5.05.

The listing of impairments provides:

> Under 5.05A, hemodynamic instability is diagnosed with signs
> such as pallor (pale skin), diaphoresis (profuse perspiration),
> rapid pulse, low blood pressure, postural hypotension
> (pronounced fall in blood pressure when arising to an upright
> position from lying down) or syncope (fainting). Hemorrhaging
> that results in hemodynamic instability is potentially
> life-threatening and therefore requires hospitalization for
> transfusion and supportive care. Under 5.05A, we require only
> one hospitalization for transfusion of at least 2 units of blood.
> 6. Ascites or hydrothorax (5.05B) indicates significant loss of
> liver function due to chronic liver disease. We evaluate ascites
> or hydrothorax that is not attributable to other causes under
> 5.05B. The required findings must be present on at least two
> evaluations at least 60 days apart within a consecutive 6-month
> period and despite continuing treatment as prescribed.

*Id.* §5.00(D)(5), (6).

The ALJ made the following limited and conclusory findings regarding Listing 5.05:

I have considered whether the claimant's alcoholic
hepatitis/cirrhosis meets or medically equals Listing 5.05.
However, the record fails to show evidence of: a) hemorrhaging
from esophageal, gastric, or ectopic varices or from portal
hypertensive gastropathy; b) ascites or hydrothorax not
attributable to other causes; c) spontaneous bacterial peritonitis
with peritoneal fluid containing an absolute neutrophil count of

11

> at least 250 cells/mm3; d) hepatorenal syndrome; (e) hepatopulmonary syndrome; f) hepatic encephalopathy; or g) end stage liver disease with chronic liver disease scores of 22 or greater. Accordingly, I find that the claimant's alcoholic hepatitis/cirrhosis does not meet or medically equal Listing 5.05.

(Tr. 23).

Listing 5.05 "contains highly technical requirements based on objective medical measurements." *Coble v. Colvin*, No. 7:12cv197, 2013 WL 4597149, at *4 (4th Cir. Aug. 29, 2013).[1] The ALJ must identify the relevant listed impairments and then compare "each of the listed criteria to the evidence of (the claimant's) symptoms." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id*. Here, the administrative record contains a consultation report by Gary Vukov, MD at Grand Strand Regional Medical Center (Exhibit 16F). This report states that he evaluated the plaintiff for rectal bleeding on September 25, 2010. "Surgical consultation was obtained and felt that the patient was in acute liver failure." (Admin. Record, pp. 740-741) Regarding the rectal bleeding, he suspected "lower greater than upper in light of the negative NG tube in history." Admin. Record, p. 742) He also suspected "cholestatic phase of alcoholic hepatitis . . . [W]e are dealing with varices." *Id*. The discharge summary states: the "[l]ower GI bleed, resolved." The ALJ states as a conclusion that the record fails to show evidence of: "hemorrhaging from esophageal, gastric, or

---

[1] The case at bar is similar to the situation presented in *Lehman v. Colvin*, No. 3:13-cv-05879-RBL-KLS, 2014 WL 4409794 (W.D.Wa. Sept. 8, 2014), in which the ALJ found at step three that "the severity of the claimant's cirrhosis of the liver did not meet or medically equal [L]isting 5.05 (Chronic liver disease). The medical evidence does not show the claimant suffered from hemorrhaging from esophageal, gastric, or ectopic varices, or from portal hypertensive gastropathy that required hospitalization for transfusion of at least two units of blood . . ." *Id*. at *3. The court found that the ALJ "did not adequately explain the evidentiary basis for his determination . . ." and that "[a]lthough the ALJ stated he came to that conclusion, his analysis appeared to merely consist of assertions that those criteria had not been shown to exist. In other words, *while the ALJ found plaintiff's liver condition did not meet or medically equal Listing 5.05, his discussion focused solely on how that Listing's criteria had not been met. As such, it is impossible to determine what evidence the ALJ actually relied on to make his . . . determination . . ."* *Id*. at *6. (emphasis added)

ectopic varices or from portal hypertensive gastropathy . . ." The record shows that hemorrhaging occurred. Therefore, the issue under Listing 5.05A becomes whether the bleeding was from "esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy." The ALJ does not analyze the medical evidence to show the reasons for his conclusory findings.[2] This Court cannot adopt the Commissioner's argument that rectal bleeding was unrelated to the liver disease and did not result from "esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy." Such a finding would constitute making findings in the first instance, which is the function of the ALJ. Upon remand, the ALJ should consider the medical evidence as to whether the plaintiff met the requirements of Listing 5.05A and provide a detailed explanation of his decision in order to allow meaningful judicial review.

As to Listing 5.05B, Plaintiff asserts that the ALJ failed to properly evaluate Listing 5.05B and to "obtain a medical expert to issue an opinion as to whether Ms. Tenaglia's liver disease equals said listing." Obj., p. 6. The Magistrate Judge refers to Disability Determination and Transmittal Forms (FORM SSA-831) signed by Mary S. Lang, M.D. and states that these constitute medical opinion evidence on the listing. The signature of a state agency medical or psychological consultant on a Disability Determination and Transmittal Form "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review," *Smith v. Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011). However, here, the forms were signed by Dr. Lang on February 9, 2011 and state

---

[2] The Court is not the proper entity to evaluate the medical evidence; that is the function of the ALJ. Interestingly, in a discussion of Listing 5.05A, a district judge in *Markulin v. Comm'r*, No. 2:14-02612(KM), 2015 WL 6121899 (D.N.J. October 15, 2015), refers to medical records that rectal varices had been noted but that the record contained no evidence of hemorrhaging from those varices. This contrasts with the government's argument that rectal bleeding is not included in the types of hemorrhaging contemplated by the listing. The Court's limited scope of review does not allow it to interpret medical records as they relate to the listing.

that she reviewed certain medical records dated between October 12, 2010 and February 3, 2011 and "evidence we received from you on October 26, 2010". (Admin. Record, p. 116) The record also contains a Form 831 signed by Kathleen Broughan, PhD, which indicates that she reviewed records dated June 7, 2011 and "evidence submitted by the claimant, received 4/25/11". (Admin. Record, P. 119) Neither expert makes any findings regarding a listing but simply denies the claims. The record also contains a Physical Residual Functional Capacity Assessment by medical consultant, Dr. Mary Lang, dated February 7, 2011. Dr. Lang states in this assessment that there is "no listing level severity". (Admin. Record, p. 828) In arguing the applicability of Listing 5.05B, the plaintiff points to evidence from October 2013 to January 2014 which Dr. Lang did not review. The Magistrate Judge correctly finds that in determining a claimant's RFC an ALJ may rely on a medical source that did not have access to the entire evidentiary record as long as the ALJ himself considered the entire record and substantial evidence supports his decision, citing *Thacker v. Astrue*, No. 11-246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011). However, the Court finds that detailed medical guidance is necessary to a proper evaluation of Listing 5.05A and B in this case, as Listing 5.05 "contains highly technical requirements based on objective medical measurements." *Coble*, 2013 WL 4597149, at *4.

The Court finds that the ALJ failed to make sufficient findings regarding Listing 5.05 to enable the Court to meaningfully review the matter. On remand, the ALJ shall consult a medical expert to obtain an opinion as to whether the plaintiff meets either Paragraph A or B of Listing 5.05 and then compare each of the requirements of Paragraphs A and B of the listing to the evidence of the claimant's symptoms.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative

transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, and the applicable law.  For the reasons set forth in the Court's order, the Court respectfully rejects the R & R and remands the case for the ALJ to consult a medical expert regarding Listing 5.05A and B and further evaluate the evidence as it relates to this listing, as set forth herein.

**IT IS SO ORDERED.**

Florence, South Carolina                                            s/ R. Bryan Harwell
March 22, 2016                                                          R. Bryan Harwell
                                                                                 United States District Judge